2013 Ark. App. 374

**Elizabeth WEINSTEIN, Appellant**

v.

**DIRECTOR, ARKANSAS DEPARTMENT OF WORKFORCE SERVICES, and Arkansas Department of Environmental Quality, Appellees.**

No. E–12–495.

Court of Appeals of Arkansas.

June 5, 2013.

Elizabeth Anne Weinstein, pro se appellant.

Roger Harrod, Maumelle, for appellee Artee Williams, Director of Department of Workforce Services.

RITA W. GRUBER, Judge.

$|_1$Elizabeth Weinstein appeals the denial of her unemployment benefits based on a finding that she was discharged for misconduct. Evidence at her hearing before the Appeal Tribunal focused on disciplinary actions taken against her during her work as an attorney at the Arkansas Department of Environmental Quality (ADEQ) in December 2010, April 2011, and May 2011.

The Tribunal entered a written decision examining these actions under ADEQ's policy of progressive discipline, which placed offenses into Groups 1–3; Group 2 offenses remained active for two years, and an accumulation of two active Group 2 offenses was grounds for dismissal. The Tribunal's decision included the following findings of fact:

In December 2010, the claimant was reprimanded because she failed to follow routing procedures which required that she forward all completed documents to her immediate supervisor for review prior to disseminating completed documents to any other $|_2$persons. This was considered to be a Group 1 offense, and she was suspended from work for ten days.[1] She was also reprimanded in April 2011 for unsatisfactory work performance. Specifically, the claimant submitted an unsatisfactory brief for review just a few hours prior to the deadline for its filing. This was considered to be a Group 2 offense, and the claim-

---

1. The December 2010 disciplinary form in the record before us shows both a Group 1 offense for "unsatisfactory performance in drafting the complaint" and a Group 2 offense for "failure to follow supervisor's instructions," which resulted in ten days' unpaid leave and ninety days' probation.

ant was placed on probation for ninety days.[2] In May 2011, the claimant was again reprimanded for failure to follow routing procedures, a Group 2 offense. Based on her accumulation of two Group 2 offenses, one of which occurred during her probationary period, the claimant was discharged from work.

The Arkansas Board of Review adopted and affirmed the Tribunal's decision. The Board additionally found that even if the December 2010 incident alone did not constitute misconduct, the April and May 2011 reprimands showed misconduct in connection with Weinstein's work, and that the April and May 2011 incidents that ultimately led to her discharge were a willful disregard of the employer's best interests. The Board concluded that Weinstein was otherwise a good employee and her "otherwise satisfactory work performance establish[ed] ... she was able to produce acceptable work previously and did not do so when she was later reprimanded for unsatisfactory work product. Therefore, [she] was discharged from last work for misconduct in connection with the work." Weinstein contends on appeal that the Board erred in finding that although the December 2010 incident may not alone have established misconduct, other incidents established that she willfully disregarded her employer's best interests; that she was able to produce acceptable work before producing an unsatisfactory work product in April 2011; and that her failure to follow routing procedures for two documents in May 2011 supported a finding of misconduct. We affirm the Board's decision to deny benefits.

The Board of Review's findings of fact are conclusive if they are supported by substantial evidence. Ark.Code Ann. § 11–10–529(c)(1) (Repl.2012); *Perry v.*

*Gaddy,* 48 Ark.App. 128, 129, 891 S.W.2d 73, 74 (1995). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *West v. Dir.,* 94 Ark.App. 381, 383, 231 S.W.3d 96, 98 (2006). We review the Board's findings in the light most favorable to the prevailing party, reversing only when the findings are not supported by substantial evidence. *Ballard v. Dir.,* 2012 Ark. App. 371, at 4, 2012 WL 1943622. Issues of credibility of witnesses and weight to be afforded their testimony are matters for the Board to determine. *Id.*

Testimony at the hearing was given by Tammera Harrelson, who became chief of ADEQ's legal division on February 21, 2011; Weinstein; and Dawn Guthrie, an attorney specialist and former managing attorney at ADEQ. The Board's decision recounted Guthrie's testimony that she was ordered by Director Teresa Marks to reprimand Weinstein for failure to follow routing procedures in December 2010, that Weinstein may have thought that she was to bypass normal routing procedures due to Director Marks's urgent request for the document, and that Guthrie would not have written the reprimand had she not been instructed to do so by the director. The Board noted Harrelson's testimony that Weinstein was reprimanded in April 2011 because approximately five hours prior to a filing deadline, due to poor time management, she submitted an unsatisfactory legal brief to Harrelson for editing; that the brief required significant editing; and that Harrelson placed Weinstein on a ninety-day probation and created timelines and deadlines for her to manage her time more effectively. The Board also noted Harrelson's testimony that in May 2011, she observed two documents on the director's desk authored by Weinstein, which

---

**2.** The April 2011 disciplinary form reflects a Group 1 offense for unsatisfactory work.

she had not routed to Harrelson as required by routing procedures, and that Weinstein had not edited one of them.

The Board acknowledged Weinstein's testimony that she should not have been reprimanded in December 2010 because, based on the director's urgent request for the document, Weinstein assumed she was being instructed to bypass routing procedures; that the April 2011 reprimand was also unjust because she completed the brief and it was filed by the deadline; and that the May 2011 reprimand resulted from miscommunication, based on her explanation that the documents "somehow" were forwarded directly to the director despite Weinstein's intention that Harrelson review them first. Finally, the Board discussed testimony regarding Weinstein's health as a reason for her dismissal—noting her suggestion that the discharge might have occurred because she had requested an FMLA leave of absence for serious asthma and ultimately was granted the leave to begin in June 2011. The Board noted Harrelson's testimony that when she asked Weinstein if there was a problem resulting in the decline in her work, Weinstein indicated that she did not know what was wrong and that her problems with work performance were not related to her health condition.

In its reasoning and conclusions, the Board weighed the evidence presented at the hearing. It found that Weinstein reasonably thought in December 2010 that she was to bypass |₅routing procedures and immediately submit documents to the director; that in April 2011, she submitted an unsatisfactory brief just hours before its filing deadline because she failed to begin working on it in a timely manner; and that in May 2011, she failed to review and edit a document before submitting it to the director for final review and intentionally failed to follow routing procedures

although the process had been reviewed with her numerous times. The Board found that Weinstein was subject to discharge because she had accumulated two active Group 2 offenses, that her actions were against her employer's best interests, and that her discharge was for misconduct in connection with her work.

### Incident of December 2010

Ms. Weinstein contends in her first point on appeal that, in light of the Board's finding that the December 2010 work product may not itself have established misconduct, "two later incidents, and failure to follow routing procedures" did not establish that she had willfully disregarded her employer's best interests. She asserts that the issue was whether each of her three disciplinary offenses constituted misconduct, and she complains that the Tribunal's finding that she accumulated two active Group 2 offenses was based on the December 2010 incident that both the Tribunal and the Board deemed not to constitute misconduct. She complains that the Board took the December action into account in determining that she was discharged for willful disregard of her employer's best interests.

■ Whether the employee's acts are willful or merely the result of unsatisfactory conduct or unintentional failure of performance is a fact question for the Board. *George's, Inc. v. Dir.*, 50 Ark.App. 77, 80, 900 S.W.2d 590, 592 (1995). Here, we find no merit to Weinstein's |₆argument that the Board's finding of misconduct was based on a finding that she willfully disregarded her employer's best interests in December 2010. As discussed in the second and third points of this appeal, we hold that the Board's findings regarding the April and May 2011 incidents are supported by evidence independent of the 2010 incident.

*Incidents of April and May 2011*

■ An employee shall be disqualified for unemployment benefits upon a finding that he or she was discharged from his or her last work for misconduct in connection with the work. Ark.Code Ann. § 11–10–514(a)(1) (Supp.2009).[3] For unemployment-insurance purposes, the definition of misconduct requires more than mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion. *Johnson v. Dir.*, 84 Ark.App. 349, 352, 141 S.W.3d 1, 2 (2004). An element of intent is also required: mere good-faith errors in judgment or discretion and unsatisfactory conduct are not misconduct unless of such a degree or recurrence as to manifest culpability, wrongful intent, evil design, or intentional disregard of an employer's interest. *Id.*

■ In her second point on appeal, Weinstein contends that the Board erred in finding that her otherwise satisfactory work performance established that she was able to produce acceptable work and did not do so when she was reprimanded for an unsatisfactory work ₇product in April 2011. In her third point, she contends that the Board erred in finding that her failure to follow routing procedures for two documents in May 2011 supported a finding of misconduct.

Weinstein asserts that the April 2011 unsatisfactory work product did not constitute a clear instance of misconduct and that documents supporting her requests for medical leave conflict with the Board's finding that her past satisfactory work performance established her ability to produce acceptable work in April 2011. She argues that these documents put her employer on notice that a serious health condition and medications impaired her ability to perform essential functions of her job. For example, in a letter dated April 8, 2011, her physician informed human resources at ADEQ that Weinstein's chronic asthma, severe airway obstruction, and prednisone dependency for control of the disease were medical conditions that would necessitate "medical leave from work ... on an intermittent basis." An April 20, 2011 letter from Weinstein asked that her prednisone dependency and side effects from asthma, such as mental confusion and difficulty in maintaining her train of thought, be considered in her request for FMLA.

Weinstein points to Harrelson's testimony that she was unaware of the FMLA requests prior to taking disciplinary action over the unsatisfactory work product on April 12, 2012; that Weinstein approached her in March 2012 about taking leave, which Harrelson believed was related to asthma, but did not discuss what problems she was having; and that because another attorney dealt with FMLA requests, Harrelson tried to stay out of it beyond narrowing down the dates. Harrelson additionally testified that Weinstein appeared to be having time ₈management problems and on April 5, 2011, when the two of them were going through her case files, said that she had a response brief due the next day to a motion for summary judgment. Harrelson testified that she directed Weinstein to work on it immediately, received an unacceptable draft at 11:15 the next

---

**3.** Weinstein notes in her reply brief that ADEQ improperly relies on a statutory provision that had not become effective until after the date of her discharge. *See* Ark.Code Ann. § 11–10–514(d)(2) (Repl.2012) (providing that a "repeated act of commission or omission or negligence despite progressive discipline shall constitute proof of intentional poor performance").

morning, and considered the argument "weak" in the brief that Weinstein finished and sent out at 4:30. On cross-examination, Harrelson said that Weinstein's initial brief did not adequately address jurisdiction and that although the brief filed at the end of the day included additional arguments with some legal support, Harrelson was concerned that citations could have been added. Harrelson testified that Weinstein "did not discuss how her health affected her performance with me or whether she was having problems with thinking, sleeping, or concentrating or whether she thought she had a disability."

Harrelson also testified regarding her recommendation for termination in May 2011 after seeing two orders on the director's desk waiting for a signature after supposedly coming across Harrelson's desk. Harrelson testified that one order had never crossed her desk and the other did not include specific edits that she had directed Weinstein to make. Harrelson had directed staff in April 2011 that all orders were to come through her before going out, and she considered the May 2011 incident "the proverbial straw." She acknowledged that Weinstein had been a valued member of the department who had done well in the past. Harrelson was unable to say whether Weinstein was doing as well as she was able to and testified that she made her decision based on job performance. Harrelson testified that she reviewed the December 2010 disciplinary action, in which she was not involved, and "took it into account" when she recommended termination.

Weinstein was questioned by the hearing officer regarding the May 2011 incident. She testified that she did not know how the two documents ended up bypassing Harrelson; that she (Weinstein) did not knock on Harrelson's door because it was closed for a meeting; that Weinstein left the two binders with "Mary," the administrative assistant who sat immediately across from Harrelson's desk, and asked her to give them to Harrelson; and that Mary assured Weinstein that she would. Weinstein acknowledged that the binders bore her initials and not Harrelson's, and she was unable to explain how the binders were delivered to the director without going to Harrelson unless the person delivering mail to Mary perhaps took them. The hearing officer also inquired if Harrelson had asked Weinstein what problem she was having with her performance. Weinstein answered, "I don't think we ever had that conversation. I know that the legal staff knew I had been ill for years and my health was in serious decline."

We affirm the Board's denial of unemployment benefits based on misconduct in connection with the work. Harrelson's testimony supported the Board's finding that in April 2011, Weinstein submitted an unsatisfactory brief for editing just hours before the filing deadline due to time-management problems. The testimony of Harrelson and Weinstein supported the finding that in May 2011, Weinstein failed to follow routing procedures and failed to review and edit a document before it was submitted to the director. In light of evidence that the routing process had been explained to her numerous times, the Board was free to discredit her account of events and to find that she intentionally bypassed Harrelson. The Board was not required to conclude that medical documentation supporting Weinstein's request for medical leave was proof of her inability to perform her work satisfactorily, as she had previously done.

The Board's findings regarding the April and May 2011 incidents and Weinstein's ability to perform her job turned on the Board's resolution of the credibility of witnesses and the weight of the evidence.

Substantial evidence supports the Board's finding that Weinstein's acts were against her employer's best interests and that she was discharged for misconduct in connection with the work.

Affirmed.

GLOVER and VAUGHT, JJ., agree.