

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** E-14-765

CHELSEA JONES
                                    APPELLANT

V.


DIRECTOR, DEPARTMENT OF
WORKFORCE SERVICES, AND
WILLIAM T. ST. JOHN
                                    APPELLEES

**Opinion Delivered** September 16, 2015

APPEAL FROM THE ARKANSAS
BOARD OF REVIEW
[NO. 2014-BR-02044]

REVERSED AND REMANDED

---

### RITA W. GRUBER, Judge

Appellant, Chelsea Jones, appeals from the decision of the Arkansas Board of Review (Board) denying her unemployment benefits upon finding that she was discharged from her last work for misconduct in connection with the work.[1] Because we hold that substantial evidence does not support the Board's finding of misconduct, we reverse the Board's denial and remand for an award of benefits.

Appellant had been employed by appellee, William St. John, as a dental hygienist for eighteen months when she was discharged on May 22, 2014. The Board found that appellee discharged appellant for the "rude and offensive manner" in which appellant argued with appellee in a telephone conversation on May 21, 2014. Specifically, the Board found that appellant became upset and defensive on the phone and told appellee that his patients felt

---

[1] The Board denied appellant's appeal from the Arkansas Appeal Tribunal, and thus by statute, the decision of the Appeal Tribunal is deemed to be a decision of the Board. Ark. Code Ann. § 11-10-525(f) (Repl. 2012).

"mistreated" by him and that she often had to apologize on his behalf. Further, the Board found that appellant was aware "on or before May 21, 2014, that she was to have notified St. John with regard to her schedule." From this evidence, the Board determined that appellant's actions constituted a disregard of the standard of behavior that an employer has a reasonable right to expect from an employee and that appellant was discharged for misconduct.

The only evidence presented by appellee was his own statement written on June 19, 2014, regarding the discharge. He did not appear or testify at the hearing. In his statement, he explained that he discharged appellant for "several reasons." He said that appellant suffered from numerous health problems and had called in sick on May 21, 2014. She also informed the receptionist that she would be having outpatient surgery on May 30, 2014. The office was closed on May 30, a Friday. He stated that his receptionist had told appellant that he wanted to talk to her. Appellee said that appellant's husband called him that afternoon and appellee told the husband that he wanted to speak with appellant. Appellant called appellee later that evening, and he said that he needed to know her "health status" because her "performance was beginning to decline." He stated that she became argumentative and defensive and "complained about how I treated her and my patients and how she had to apologize to my patients all the time." He thought appellant was mad because appellee had been rude to her husband on the phone. Appellee stated that his receptionist had "repeatedly told [appellant] for several weeks that she needed to inform [appellee] personally of her problems and plans." Appellee stated that he "had no intention of terminating her until she called that night with her attitude. I only wanted to know what was going on. I told her that if that was the way

she felt about me the [sic] I no longer needed her employment."

The only testimony at the hearing before the Tribunal was appellant's. She explained that she did not initially tell appellee about her surgery because she had routinely notified the office manager, who handled the schedule. She said that she had informed the office manager of her surgery immediately after learning about it on May 16, 2014, a Friday. She said that she had not yet told appellee personally because they had been so busy at work. She testified that she had not planned to miss any work for the surgery, which was scheduled on a day the office was closed, and that she thought telling the office manager was the best thing to do. According to appellant, she called appellee on the evening she was told to do so and he got really mad and started yelling because he had discovered from one of his patients that appellant was having surgery. When she told him that she had informed the office manager on the day that she found out about the surgery, he said, "You don't know what the hell is wrong with you" and told her none of the assistants liked her at work. She said that he told her not to come in the next week.

We review the Board's findings in the light most favorable to the prevailing party and affirm the Board's decision if it is supported by substantial evidence. *Hubbard v. Dir.*, 2015 Ark. App. 235, at 3, 460 S.W.3d 294, 297. Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* at 3–4, 460 S.W.3d at 297. Even when there is evidence upon which the Board might have reached a different decision, the scope of our review is limited to a determination of whether the Board reasonably could have reached the decision it did based upon the evidence before it. 2015

Ark. App 235, at 4, 460 S.W.3d at 297. Our function on appeal, however, is not merely to rubber stamp decisions arising from the Board. *Id.*

A person shall be disqualified from receiving unemployment benefits if it is determined that the person was discharged from his or her last work for misconduct in connection with the work. Ark. Code Ann. § 11-10-514(a)(1) (Supp. 2013). The employer has the burden of proving by a preponderance of the evidence that an employee engaged in misconduct. *Spencer v. Dir.*, 2014 Ark. App. 479, at 1. "Misconduct," for purposes of unemployment compensation, involves (1) disregard of the employer's interest, (2) violation of the employer's rules, (3) disregard of the standards of behavior the employer has a right to expect of its employees, and (4) disregard of the employee's duties and obligations to the employer. *Id.* at 1–2. To constitute misconduct, however, there must be the element of intent. *Hubbard*, 2015 Ark. App. 235, at 3, 460 S.W.3d at 297. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion do not constitute misconduct. *Id.* There must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design. *Id.*

In this case, appellee's statement indicated that he discharged appellant for her alleged rude behavior on the phone on May 21, 2014. Appellee was irritated because he had learned from a patient rather than from appellant that appellant was having surgery. His own statement revealed that he had informed appellant through his receptionist that he wanted to

SLIP OPINION

speak with her on May 21, 2014. His statement does not dispute that appellant had already informed the office manager of her surgery or that it was her routine to inform the office manager about her absences. Indeed, appellee presented no evidence of a policy regarding employee absences nor indicated that appellant had violated any such policy. He simply said that he wanted to speak with her. Moreover, although appellant first had her husband call appellee, appellant did call appellee on the evening of May 21, 2014. Appellee did not discharge appellant for absenteeism or for the violation of a policy regarding reporting absences. Appellee discharged appellant for rudeness. He specifically stated that he "had no intention of terminating her until she called that night with her attitude." The Board found that appellant was discharged for the "rude and offensive manner in which she argued with [appellee]" in a telephone conversation.

We reverse the Board's decision. At best, the record reflects that appellant was discharged for an isolated instance of rudeness during an evening phone call with her employer. The phone call occurred on the evening of a day that appellant had stayed home from work because she was feeling ill. This does not constitute substantial evidence of misconduct for purposes of unemployment compensation, which must include an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design.

Reversed and remanded.

KINARD and HIXSON, JJ., agree.

*Larry J. Steele PLC*, by: *Larry J. Steele*, for appellant.
*Phyllis Edwards*, for appellee.