Cite as 2019 Ark. App. 468

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** E-19-39

| | |
|---|---|
| ALLEN THOMAS<br><br>APPELLANT<br><br>V.<br><br>DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, AND WEYERHAEUSER NR COMPANY<br>APPELLEES | **Opinion Delivered:** October 23, 2019<br><br>APPEAL FROM THE ARKANSAS BOARD OF REVIEW<br>[NO. 2018-BR-01493]<br><br><br>AFFIRMED |

## RITA W. GRUBER, Chief Judge

Appellant Allen Thomas appeals the decision of the Arkansas Board of Review (Board), which affirmed the opinion of the Appeal Tribunal (Tribunal) denying him unemployment benefits on the basis that he was discharged from last work for misconduct connected with the work. Thomas alleges that there is no substantial evidence to support the Board's findings that he was discharged for misconduct because the employer failed to follow its written policy for termination. We disagree and affirm.

Thomas was employed with Weyerhaeuser NR Company (Weyerhaeuser) as an operator for a stacker-stick-layer machine. He first began working for Weyerhaeuser in 1989 and was discharged in 2018 for violating its "lock out/tag out" (LOTO) safety policy. The LOTO policy requires operators to shut down the power to a machine and place a lock on the power source before entering the body of the equipment to work on it. The purpose

of the policy is to prevent injury by ensuring that no bodily contact is made with any moving machine parts. The policy was in writing and reviewed with employees once a year.

On July 24, 2018, the company sawmill lead and Thomas's supervisor, Jason Russell, observed video footage that showed Thomas placing his arm up to his shoulder into an area of the machine with moving parts. The power had not been cut, and he did not follow the LOTO procedure. Thomas was subsequently suspended pending an investigation and was ultimately discharged. The Arkansas Department of Workforce Services denied Thomas's application for unemployment benefits; he appealed its decision to the Tribunal.

During the telephone hearing held by the Tribunal, Thomas admitted that he knew about the safety policy. He could explain the policy in detail but asserted that he did not think to employ the safety procedures because he needed to straighten a "stick" in the machine, and it took "just a second." In defense of his conduct, he stated that all operators straightened sticks without cutting power and that Russell had witnessed him do that without locking out the machine on other occasions but had never reprimanded him. When questioned about Thomas's allegations, Russell explained that he had witnessed operators reach into only the first "pan" of the machine to straighten a stick but that Thomas had reached farther than that, with his arm almost up to his shoulder into the equipment. Russell said that if Thomas had contact with a moving part, the result would have been catastrophic, possibly causing death.

The Tribunal found that Thomas was disqualified from receiving unemployment benefits under Arkansas Code Annotated section 11–10–514(b)(1) (Supp. 2017), reasoning that he had been "discharged from last work for misconduct in connection with the work

2

on account of a willful violation of the employer's written rules pertaining to the safety of persons." On review, the Board determined that the Tribunal was correct as to the outcome and found that Thomas had been discharged for a "willful violation of the rules or customs of the employer pertaining to the safety of fellow employees, persons, or company property." Arkansas Code Annotated section 11-10-514(b)(1) provides, in relevant part, that an individual who has been discharged for misconduct for willfully violating an employer's bona fide written rules or customs—including those pertaining to the individual's safety or the safety of fellow employees, persons, or company property—shall be disqualified from receiving unemployment benefits until, subsequent to the date of disqualification, the individual has been paid wages in two quarters for insured work totaling not less than thirty-five times his or her weekly benefit. Specifically, the Board determined that Thomas had violated the "customs of the employer pertaining to safety." This appeal followed.

Board decisions are upheld if they are supported by substantial evidence. *Blanton v. Dir.*, 2019 Ark. App. 205, 575 S.W.3d 186. Substantial evidence is such relevant evidence that reasonable minds might accept as adequate to support a conclusion. *Id.* In appeals of unemployment-compensation cases, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.* Even if there is evidence that could support a different decision, our review is limited to whether the Board could have reasonably reached its decision as a result of the evidence presented. *Id.* However, our function on appeal is not merely to rubber-stamp decisions arising from the Board. *Wilson v. Dir.*, 2017 Ark. App. 171, 517 S.W.3d 427.

When an individual is discharged from employment, the employer has the burden of proving by a preponderance of the evidence that the employee engaged in misconduct. *Jones v. Dir.*, 2015 Ark. App. 479, 470 S.W.3d 277. Misconduct, for purposes of unemployment compensation, involves (1) disregard of the employer's interest, (2) violation of the employer's rules, (3) disregard of the standards of behavior the employer has a right to expect of its employees, and (4) disregard of the employee's duties and obligations to the employer. *Keith v. Dir.*, 2018 Ark. App. 541, 564 S.W.3d 296. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion do not rise to the level of misconduct. *Follett v. Dir.*, 2017 Ark. App. 505, 530 S.W.3d 884. There must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design. *Id.*

On appeal, Thomas argues that Weyerhaeuser disregarded its own disciplinary policy because it did not consider "the circumstances surrounding the failure to utilize the procedures" as was required. He contends that Weyerhaeuser should have considered (1) the pressure employees were under to get product out, (2) his similar use of the machine in the past, and (3) his long work history with the company. Thomas asserts that because it failed to follow the first-offense discharge policy by not considering the circumstances of the safety violation, Weyerhaeuser was not justified in terminating him under it, and as a result, the Board's findings were not supported by substantial evidence. We disagree. Weyerhaeuser's disciplinary procedures state in part:

4

Because of the potential seriousness of injury for violation of the following safety rules these disciplinary procedures shall apply:

1. First offense discharge—

Failure to properly utilize lockout/tagout procedures. Circumstances surrounding the failure to utilize the procedures will be considered.

We have said when the employer has no written policy or fails to follow its written policy, then the facts must be evaluated to determine whether the employee's behavior was a willful disregard of the employer's interest. *Hopkins v. Dir.*, 2019 Ark. App. 84, at 4, 571 S.W.3d 524, 527; *see also Whitmer v. Dir.*, 2017 Ark. App. 367, at 4, 525 S.W.3d 45, 48.

Here, Weyerhaeuser's disciplinary policy allowed for discharge after a first offense for failure to use LOTO safety procedures following consideration of the surrounding circumstances of the violation. The evidence is clear that Thomas failed to follow the required safety procedure. His assertion that the Board determined that Weyerhaeuser had failed to follow its policy for a first-offense discharge is incorrect. The Board found that it was Weyerhaeuser's custom to allow "reaching into the first pan [of the machine]" without utilizing the lock-out procedure, but beyond that, a tool or the lock-out procedure was required. Finding that Weyerhaeuser had a certain custom in addition to its written policy is not synonymous with finding that Weyerhaeuser failed to discharge Thomas according to that policy.

Regarding Thomas's claim that Weyerhaeuser should have considered the pressure he was under to get product out, it is not disputed that there was pressure on the employees. However, Thomas admitted that there was no pressure to also disregard the safety procedures. His next assertion—that Weyerhaeuser failed to consider similar use of the

5

machine in the past and that his supervisor witnessed similar use without prior reprimand—is contradicted by Russell's testimony that he had never observed Thomas with his arm that far into the machine. Issues of witness credibility and the weight to be afforded their testimony are matters for the Board to determine. *Weinstein v. Dir.*, 2013 Ark. App. 374, 428 S.W.3d 560. After Thomas had been suspended, Weyerhaeuser investigated the circumstances of his safety violation. The video of Thomas reaching into the machine was reviewed by several people within the company, and it interviewed seven other workers about how they would respond in the same situation, all of whom explained that they believed they could reach into the "first pan" of the machine but needed to use a "pike pole" or lock out the machine beyond that area. Given the testimony and the evidence in the record, we cannot say that Weyerhaeuser failed to consider the circumstances of the safety violation.

Thomas's final point is that his long tenure of employment with Weyerhaeuser supports a finding that he did not engage in intentional misconduct. However, a violation of safety rules satisfies the element of intent required to constitute misconduct. *Wilson*, 2017 Ark. App. 171, at 4, 517 S.W.3d at 429–30. Even though Thomas testified that he did not "think" to follow the safety procedures, he admitted that he had his arm in the machine, was aware of the required safety procedures, is required to follow the LOTO safety procedure at any point when his arm is in a machine, and understood he could have been mangled or worse, yet he did not follow the safety procedures before putting his arm in the machine.

Because Weyerhaeuser conducted an extensive investigation and Thomas admitted he was aware of and understood the company's LOTO safety policy, the Board could have reasonably based its decision on the evidence before it. Substantial evidence existed to support the Board's finding that Thomas willfully violated the rules or customs of the employer pertaining to safety. Therefore, we affirm the Board's denial of unemployment benefits.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.

*Humphrey Law Office*, by: *Marion A. Humphrey*, for appellant.

*Cynthia Uhrynowycz*, for appellee Director, Arkansas Department of Workforce Services.